IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| FRANCISCO GONZALEZ MARTINEZ, | § § § |
| Petitioner, | § § |
| v. | §   CAUSE NO. EP-25-CV-430-KC |
| KRISTI NOEM et al., | § § § |
| Respondents. | § § |

**ORDER**

On this day, the Court considered Francisco Gonzalez Martinez's Petition for a Writ of Habeas Corpus ("Petition"), ECF No. 1. For the following reasons, the petition is **GRANTED IN PART**.

**I.    BACKGROUND**

This case involves Gonzalez Martinez's challenge to Respondents' decision to detain him in immigration custody without a bond hearing. The following facts are derived from the allegations in the Petition, documentary evidence submitted by the parties, and representations made by counsel during the October 14, 2025, Hearing.

**A.    Arrival in the United States & Immigration Proceedings**

Gonzalez Martinez is a Mexican citizen who entered the United States in 2003 and has lived here for the past twenty-two years. Pet. ¶ 12. Gonzalez Martinez does not have any legal immigration status. *Id.* He is a father of five children, four of whom are United States citizens, and he has no criminal history. *Id.* ¶¶ 19, 20. On August 29, 2025, Gonzalez Martinez was taken into custody by Immigration and Customs Enforcement ("ICE"), and he is currently detained at the ERO El Paso Camp East Montana facility in El Paso, Texas. *Id.* ¶¶ 9, 12; Minute

Entry ("Oct. 14 Hr'g") 14:06:59–14:07:08,[1] ECF No. 9.  Once detained, Gonzalez Martinez was given a Notice to Appear and removal proceedings were initiated.  Resp. Ex. A ("Notice to Appear") 1, ECF No. 7-1.  His first master calendar hearing was set for October 14, 2025, at 10:30 a.m., but was moved to October 22.  *Id.*; Oct. 14 Hr'g 14:07:35–14:08:04.  He has not been given a bond hearing, though he appears to have requested one.  Pet. ¶¶ 12, 21, 23.

Immigration Courts are not currently setting any bond hearings for individuals in Gonzalez Martinez's position.  Oct. 14 Hr'g 14:08:45–14:10:01, 14:13:15–14:14:12.  Gonzalez Martinez's counsel indicated that he may seek cancellation of removal.  *Id.* at 14:12:45–14:13:25, 14:14:26–14:16:23.

B.  **Procedural History**

On September 29, 2025, Gonzalez Martinez filed a Petition for a Writ of Habeas Corpus, asking the Court to order his immediate release, or alternatively, order a bond hearing before an immigration judge.  Pet. 34.  In conjunction, Gonzalez Martinez filed a Motion for a Temporary Restraining Order ("TRO"), ECF No. 2, requesting his immediate release from ICE custody.  The Court denied the Motion, but ordered that Respondents could not remove Gonzalez Martinez from the United States or transfer him from this Division and District during the pendency of the case.  Sept. 30, 2025, Order, ECF No. 5.  The Court also ordered Respondents to show cause why the application for a writ of habeas corpus should not be granted.  Sept. 30, 2025, Show Cause Order, ECF No. 6.  Respondents then filed a Response, ECF No. 7, and Gonzalez Martinez filed a Reply, ECF No 8.  The Court held a hearing on October 14, 2025.

---

[1] The timestamps correspond to the local time of day in El Paso, Texas, on October 14, 2025, the day of the Hearing.

In his Petition, Gonzalez Martinez claims that (1) he is not subject to mandatory detention under 8 U.S.C. § 1225(b), and (2) his continued detention violates his right to procedural due process under the Fifth Amendment. Pet. ¶¶ 42–46, 70–78.

Respondents make three arguments in opposition: (1) the Court lacks subject matter jurisdiction; (2) Gonzalez Martinez is subject to mandatory detention without a bond hearing under 8 U.S.C. § 1225(b); and (3) Gonzalez Martinez is not entitled to any more process than what the statute provides. Resp. 7–20.

## II.   DISCUSSION

This Court recently decided two other petitions for writs of habeas corpus brought by immigration detainees challenging their mandatory detention without a bond hearing under § 1225(b). *See Santiago v. Noem*, No. 3:25-cv-361-KC, 2025 WL 2792588, at *3 (W.D. Tex. Oct. 2, 2025); *Lopez-Arevelo v. Ripa*, --- F. Supp. 3d ----, 2025 WL 2691828, at *5 (W.D. Tex. Sept. 22, 2025). Respondents rely on many of the same arguments that this Court has already addressed and rejected. Where the arguments retread old ground, the Court need not repeat its analysis, especially where that analysis is consistent with "the overwhelming majority" of courts to consider these issues in recent months. *See Buenrostro-Mendez v. Bondi*, No. 25-cv-3726, 2025 WL 2886346, at *3 (S.D. Tex. Oct. 7, 2025).

### A.   Jurisdiction

First, Respondents argue that the Court is stripped of jurisdiction by 8 U.S.C. §§ 1252(g) and 1252(b)(9). Resp. 11–15. The Court already rejected essentially the same arguments. *See Santiago*, 2025 WL 2792588, at *3–5 (rejecting §§ 1252(g) and 1252(b)(9) arguments); *Lopez-Arevelo*, 2025 WL 2691828, at *4–5 (rejecting § 1252(g) arguments). In their briefing, Respondents make no effort to distinguish those prior jurisdictional analyses. Resp. 11–15. At

the hearing, Respondents identified *S.Q.D.C. v. Bondi*, No. 25-cv-3348, 2025 WL 2617973 (D. Minn. Sept. 9, 2025), where the court concluded that it lacked jurisdiction to consider the petitioner's habeas challenge to their immigration detention. *Id.* at *2–3. *S.Q.D.C.* appears to represent an extreme minority position, both in its own district and nationally. *See A.A. v. Olson*, No. 25-cv-3381, 2025 WL 2886729, at *5 (D. Minn. Oct. 8, 2025) (collecting cases). In any event, it is unpersuasive for the same reasons discussed in *Santiago* and *Lopez-Arevelo*. In sum, the Court finds that it has jurisdiction to consider Gonzalez Martinez's challenge to his detention.

## B.    Statutory Interpretation

Next, the parties debate the merits of the Government's new and expansive interpretation of mandatory detention under 8 U.S.C. § 1225(b) and whether Gonzalez Martinez falls within it. Resp. 7–11; Reply 11–19. In recent weeks, courts across the country have held that this interpretation is either incorrect or likely incorrect. *See Buenrostro-Mendez*, 2025 WL 2886346, at *3 (noting that "almost every district court to consider this issue" has rejected the Government's new interpretation); *Lopez-Campos v. Raycraft*, --- F. Supp. 3d ----, 2025 WL 2496379, at *8 n.5 (E.D. Mich. Aug. 29, 2025) (collecting twelve such decisions).

At the hearing, Respondents urged the Court to consider three recent district court decisions that resolved immigration habeas petitions in the Government's favor, although "they've agreed on different issues" and "none of them seems to be on the exact same page with each other." Oct. 14 Hr'g 14:31:19–14:31:55, 14:32:04–14:34:44. The first is *S.Q.D.C.*, which, as discussed above, did not reach the merits but dismissed the case on jurisdictional grounds that this Court finds unpersuasive. The remaining decisions are *Vargas v. Lopez*, --- F. Supp. 3d ----, 2025 WL 2780351 (D. Neb. Sept. 30, 2025), and *Chavez v. Noem*, --- F. Supp. 3d ----, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025). These decisions reached the merits and agreed with the

Government's new, expansive interpretation of § 1225(b).  *Vargas*, 2025 WL 2780351, at *4–10; *Chavez*, 2025 WL 2730228, at *4–5.  As discussed, this is a minority view.  *See S.D.B.B. v. Johnson*, No. 25-cv-882, 2025 WL 2845170, at *5 (M.D.N.C. Oct. 7, 2025) (noting that at least seventeen courts have found that § 1225 "either does not or likely does not broadly apply to aliens already present within the United States" whereas only the *Vargas* and *Chavez* courts have found otherwise).

Nevertheless, the Court does not reach the statutory interpretation question because, assuming without finding that the Government's new interpretation is correct, Gonzalez Martinez is entitled to due process and succeeds in his as-applied challenge.  Neither the *Vargas* nor *Chavez* courts considered a due process claim.  *Vargas*, 2025 WL 2780351, at *10 (declining to reach a narrowly framed due process challenge to the Department of Homeland Security's [("DHS")] automatic stay regulation); *Chavez*, 2025 WL 2730228, at *1 (mentioning due process claim and then failing, without explanation, to consider it).

C.     **Procedural Due Process**

Respondents argue that "there is no colorable claim" that Gonzalez Martinez's "detention without bond is unconstitutional."  Resp. 15.  They argue that, even as a matter of due process, Gonzalez Martinez "is not entitled to anything beyond what § 1225(b) provides him."  *Id.* at 16.  This argument relies on an expansive reading of *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020) and other recent Supreme Court precedent.  *See id.* at 16–19.  The Court has already rejected such a reading.  *See Lopez-Arevelo*, 2025 WL 2691828, at *7–10.  Respondents argue that *Lopez-Arevelo* was wrongly decided without the benefit of adequate briefing.  Resp. 17.  But this Court rejected similar arguments in its subsequent *Santiago* decision.  *See Santiago*, 2025 WL 2792588, at *7–10.  And another judge in this Division recently assessed and rejected

Respondents' attempt to impugn *Lopez-Arevelo*. *See Vieira v. Anda-Ybarra*, --- F. Supp. 3d ----, 2025 WL 2937880, at *5 (W.D. Tex. Oct. 16, 2025). The Court agrees with its sister court's thoughtful analysis and declines to summarily reject Gonzalez Martinez's due process challenge.

"To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976)." *Martinez v. Noem*, No. 5:25-cv-1007-JKP, 2025 WL 2598379, at *2 (W.D. Tex. Sept. 8, 2025). Those factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. "The essence of procedural due process is that a person risking a serious loss be given notice and an opportunity to be heard in a meaningful manner and at a meaningful time." *M.S.L. v. Bostock*, No. 25-cv-1204, 2025 WL 2430267, at *8 (D. Or. Aug. 21, 2025) (citing *Mathews*, 424 U.S. at 348).

　　　　1.　　　**Private Interest**

As to the first element, "'[t]he interest in being free from physical detention' is 'the most elemental of liberty interests." *Martinez v. Noem*, 2025 WL 2598379, at *2 (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). Respondents' position appears to be that Gonzalez Martinez does not acquire a liberty interest until his detention becomes unreasonably prolonged, because he is mandatorily detained under § 1225 and does not have a statutory right to a bond hearing. Oct. 14 Hr'g 14:25:25–14:27:19. However, one's physical freedom is a paramount liberty interest, secured not just by statute but by the Constitution. *Hamdi*, 542 U.S. at 529. This liberty interest applies to noncitizens, although to varying degrees. *Martinez v. Hyde*, --- F.

Supp. 3d ----, 2025 WL 2084238, at *8 (D. Mass. July 24, 2025) (citation omitted). "[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality." *Id.* (quoting *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958)). "'In the latter instance the Court has recognized additional rights and privileges not extended to those in the former category who are merely "on the threshold of initial entry."'" *Id.* (quoting *Leng May Ma*, 357 U.S. at 187).

Gonzalez Martinez has been living in this country for twenty-two years, so "it cannot be denied that [he] was 'already in the country.'" *See id.* (quotations omitted). He has no criminal history, and he has established a family and a community here. In custody, he is suffering "all the deprivations of incarceration, including loss of contact with friends and family" "and, most fundamentally, the lack of freedom of movement." Reply 28 (citations omitted).

In recent weeks, district courts have considered due process claims in habeas petitions filed by noncitizens without lawful immigration status who entered the United States surreptitiously, like Gonzalez Martinez. Those courts have found that because the petitioners established a life here—albeit without authorization—they possessed a strong liberty interest in their freedom from detention. *See, e.g.*, *Sanchez Alvarez v. Noem*, No. 25-cv-1090, 2025 WL 2942648, at *1, 7 (W.D. Mich. Oct. 17, 2025); *Chogllo Chafla v. Scott*, Nos. 25-cv-437, 438, 439, 2025 WL 2688541, at *1, 10 (D. Me. Sept. 22, 2025). The Court finds these decisions persuasive and consistent with the longstanding principle that due process applies to those who are present in the interior of the United States, regardless of their citizenship status. *See Leng May Ma*, 357 U.S. at 187. Thus, the first *Mathews* factor weighs in favor of Gonzalez Martinez.

### 2. Risk of Erroneous Deprivation

Under the second *Mathews* factor, the Court considers "whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks." *Martinez v. Noem*, 2025 WL 2598379, at *3 (quoting *Gunaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (D. Minn. May 21, 2025)).

Here, detaining Gonzalez Martinez without holding a bond hearing creates a substantial risk that he may be erroneously deprived of his liberty. Without an individualized determination, it cannot be said that detention is warranted in his case. This risk can be easily ameliorated through a bond hearing. Indeed, agency decisionmakers regularly "conduct[] individualized custody determinations . . . consider[ing] flight risk and dangerousness." *Velesaca v. Decker*, 458 F. Supp. 3d 224, 242 (S.D.N.Y. 2020) (citation omitted); *see also* 8 C.F.R. §§ 236.1(c)(8), 1003.19(h)(3). Under "decades of DHS's own practices" prior to 2025, noncitizens "who entered without inspection" and were later arrested, just like Gonzalez Martinez, received bond hearings. *Chogllo Chafla*, 2025 WL 2688541, at *8 (citations omitted). This is precisely the type of proceeding that would give Gonzalez Martinez an opportunity to be heard and to receive a meaningful assessment of whether he is dangerous or likely to abscond, and it would greatly reduce the risk of an erroneous deprivation of his liberty. Therefore, the second *Mathews* factor weighs in favor of Gonzalez Martinez.

### 3. Government's Interest

Respondents do not identify their interest in detaining Gonzalez Martinez without a bond, other than perhaps their general interest in enforcing the INA as they interpret it. *See* Resp. 15–20. But again, assuming Respondents' interpretation of the statute is correct, Gonzalez Martinez's constitutional interest in his liberty exists above and apart from the INA. *See*

*A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) ("[T]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.") (citation omitted). Certainly, the Government has an interest in ensuring that noncitizens appear for their removal hearings and do not pose a danger to the community. But these concerns would be squarely addressed through a bond hearing. Thus, the third *Matthews* factor also weighs in favor of Gonzalez Martinez.

Since all *Mathews* factors support Gonzalez Martinez's position, the Court finds that his detention without an individualized assessment of flight risk and dangerousness deprives him of his constitutional right to procedural due process under the Fifth Amendment of the United States Constitution. Thus, he is entitled to a bond hearing. *See, e.g., Lopez-Arevelo*, 2025 WL 2691828, at *13.

**D.    Scope of Relief**

A majority of courts, including this one, have determined that the appropriate relief for an immigration detainee held in violation of due process is to require a bond hearing before an IJ. *Id.* at *12 (collecting cases). The weight of authority also holds that when ordering a bond hearing as a habeas remedy, the burden of proof should be on the Government to prove by clear and convincing evidence that the detainee poses a danger or flight risk. *Id.* at *13 (collecting cases); *Velasco Lopez v. Decker*, 978 F.3d 842, 855 n.14 (2d Cir. 2010) (citations omitted). This is so "[b]ecause the alien's potential loss of liberty is so severe . . . he should not have to share the risk of error equally." *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 214 (3d Cir. 2020) (citing *Guerrero-Sanchez v. Warden York Cnty. Prison*, 905 F.3d 208, 224 & n.12 (3d Cir. 2018)). The Court follows this consensus and orders the same remedy here.

Finally, the record reflects that IJs are disclaiming jurisdiction to conduct an individualized assessment of the necessity of detention in cases like this, to which the new

interpretation of § 1225 applies. Oct. 14 Hr'g 14:08:15–14:10:01. Therefore, the Court finds it warranted to order that Gonzalez Martinez be immediately released if a bond hearing is not held promptly. *See Lopez-Arevelo*, 2025 WL 2691828, at *13.

### III. CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus, ECF No. 1, is **GRANTED IN PART**. The Court **ORDERS** that, <u>on or before October 28, 2025</u>, Respondents shall either: (1) provide Gonzalez Martinez with a bond hearing before an IJ, at which the Government shall bear the burden of justifying, by clear and convincing evidence of dangerousness or flight risk, Gonzalez Martinez's continued detention; or (2) release Gonzalez Martinez from custody, under reasonable conditions of supervision.

**IT IS FURTHER ORDERED** that, <u>on or before October 28, 2025</u>, Respondents shall **FILE** notice informing the Court whether Gonzalez Martinez has been released from custody. If Gonzalez Martinez has not been released from custody, Respondents shall inform the Court whether and when a bond hearing was held in accordance with the preceding paragraph. Respondents shall further inform the Court, in detail, of the reasons for the IJ's decision.

<u>There will be no extensions of the October 28, 2025, deadlines.</u>

**SO ORDERED**.

**SIGNED** this 21st day of October, 2025.

_/s/ Kathleen Cardone_
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE

10